UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TAMIR A. WILSON,<br>    *Petitioner*,<br><br>v.<br><br>WARDEN—LAWRENCEVILLE<br>CORRECTIONAL CENTER,<br>    *Respondent*. | 1:24-cv-00826-MSN-WBP |

MEMORANDUM OPINION

Tamir A. Wilson ("Petitioner" or "Wilson"), a Virginia inmate proceeding *pro se*, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his January 12, 2004 convictions for forceable sodomy; two counts of robbery; two counts of burglary in the nighttime; and two counts of use of a firearm in the commission of a felony. ECF 1. On September 13, 2024, Respondent filed a Motion to Dismiss, Rule 5 Answer, and a brief in support, with exhibits. On November 26, 2024, the Court advised Petitioner of his opportunity to file responsive materials pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). ECF 14. Petitioner has not responded. The matter is ripe for disposition, and, for the reasons that follow, Respondent's Motion to Dismiss will be granted, and the petition will be dismissed with prejudice.

**I. Procedural History**

Petitioner, Tamir A. Wilson, pursuant to a plea agreement, pleaded guilty in the Circuit Court of Spotsylvania County, on June 9, 2003, to one count of forceable sodomy, in violation of Virginia Code § 18.2-67.1; two counts of robbery, in violation of Virginia Code § 18.2-58; two counts of burglary in the nighttime, in violation of Virginia Code § 18.2-89; and two counts of use of a firearm in the commission of a felony, in violation of Virginia Code § 18.2-53.1. ECF 12-1 at

46-57. On December 19, 2003, the trial court sentenced Wilson to a total of ninety years in prison, with fifty years suspended, resulting in an active sentence of forty years' imprisonment that the trial court ran concurrent with Wilson's twenty-year sentence in the Circuit Court of Stafford County, Virginia. *Id.* at 98, 101. The final judgment was entered on January 12, 2004.

Wilson agreed to a stipulated statement of facts that was submitted to and accepted by the trial court in support of his guilty pleas. The stipulation[1] states as follows:

> **I. <u>Harvey robbery</u>:**
>
> **Lansing Harvey** of 10706 Brittany Court in Spotsylvania County, Virginia would testify that he is a Germanna College student who resides at that residence with his mother.
>
> He would testify that, on January 3, 2003, he was hosting a party at his home for a friend and Radford co-ed, Ann Bartholomew, when around 11:00 P.M., two black men suddenly burst in through the front door which was unlocked. The first man (the defendant, Tamir Wilson) was wearing a one-half face mask and came in brandishing two silver and black semi-automatic pistols. The second man (Duane C. Edwards) was wearing a full-face mask and brandishing a single pistol. The first robber ordered everyone to the floor, which consisted of six adult guests at the party. (A seventh guest, John Luehrs, quickly hid in a closet and began attempting to call for help on his cell phone).
>
> While Edwards was ransacking the basement computer room and dragging the safes out, Tamir Wilson proceeded to rob several of the guests of their personal possessions. He took Ann Bartholomew's wallet containing some gift cards that she had received for Christmas. He took a Kershaw knife from Mike Roberts, and he took two other knives from Joe Cleveland.
>
> Tamir Wilson then forced Mr. Harvey, at gunpoint, to the basement. There, he forced Mr. Harvey to open his own small personal safe — which Mr. Harvey would testify contained $550.00 in cash, constituting his "Christmas money from his relatives". Mr. Harvey stated that he was unable to open the second safe because it was his mother's and contained her personal prized possessions.
>
> Once Wilson had finished robbing Mr. Harvey of the contents of the safe in the basement, the two robbers then fled the residence.
>
> Mr. Harvey would testify that he then grabbed his shotgun and ran outside, but the robbers were gone. He never saw the get-away car nor its driver.

---

[1] Wilson's stipulation, consistent with *North Carolina v. Alford*, 400 U.S. 25, 37 (1970), admitted that the facts to which he stipulated were the evidence the Commonwealth could prove at a trial, and that those same facts constituted a *prima facie* case of the crimes to which he was pleading guilty.

Lansing Harvey and his guests would testify that the following items were stolen from them during the course of this robbery:

>From Lansing Harvey: $550.00 cash

>From Joe Cleveland: A butterfly knife and a black, double-bladed knife;

>From Ann Bartholomew: Her wallet with a credit card and a gift card;

>From Mike Roberts: A Kershaw knife.

Lansing Harvey would further testify that he was able to identify Duane C. Edwards to the police because he knew him from high school. He recognized Edwards' distinctive, deep voice, as well as his stocky athletic build and dark skin color. He was, however, unable to identify the other robber (Tamir Wilson).

**Detective Greg Carter** of the Spotsylvania County Sheriff's Department would testify that he was assigned to assist in this robbery investigation. Based upon the information supplied by Mr. Harvey and other witnesses pertaining to Duane Edwards' identity, he went to the residence of Duane Edwards in Spotsylvania County on January 4, 2003 armed with a search warrant.

After executing the search warrant, he questioned Duane Edwards. Based upon information Edwards revealed, the police next proceeded to the Motel 6 located on Route 17 in Stafford County, Virginia where Tamir Wilson was registered in Room 201.

**Detective Ernie Jones** of the Stafford County Sheriff's Department would tes[t]ify that, on January 4, 2003, he and other detectives staked-out Room 201 at the Motel 6 on Route 17 in Stafford County, based upon Detective Carter's information. Once Tamir Wilson was observed exiting the room, he was approached and confronted with accusations that he was involved in the Harvey robbery. At first, Tamir Wilson denied this and consented to a search of his motel room. That search revealed a black Kershaw knife (later identified as belonging to Mike Roberts), two other knives (later identified as belonging to Joe Cleveland), and a Wal-Mart gift card (believed to belong to Ann Bartholomew). The defendant's wallet containing $828.00 in cash was seized, as well as a black mask and gloves. The defendant was then taken into custody.

**Special Agent Jeff Howard** of the F.B.I. would testify that, on January 8, 2003, the defendant called him from the Rappahannock Regional Jail wanting to talk about this predicament. Special Agent Howard went to the jail on January 9, 2003 to visit the defendant, in response to his request. Before questioning the defendant, Tamir Wilson, he advised him of his rights under Miranda, which rights the defendant waived in writing.

The defendant volunteered to Special Agent Howard that, on January 3, 2003, he, Duane Edwards, and George William "G.W." Richardson had robbed the Harvey residence located at 10706 Brittany Court in Spotsylvania County. He stated that Richardson was the planner and the get-away driver—whereas he and Edwards actually committed the robbery. He further stated that Richardson supplied the pistols, at least one of which was recovered in the police search of Richardson's

home. The defendant further admitted that he was armed with two semi-automatic pistols, and that he was wearing a blue ski mask which was pulled half-way down over his face. He stated that he and Edwards together stole $550.00 in cash from Harvey, plus three knives from the other victims. He admitted that these same three knives were the ones the police located in his motel room.

**II. Cotton/Shaffer robbery:**

**Ernaline Cotton**, age 21, would testify that on December 27, 2002 she resided at 7109 Beta Court in Spotsylvania County, Virginia with her boyfriend, Joe Shaffer. She would testify that, on Friday, December 27, 2002 at approximately 10:15 P.M., two black males forced their way into the residence at gunpoint.

Ms. Cotton would testify that her four-year-old son was asleep in the townhouse at the time. At the time the robbers entered the house, she was sitting on the living room sofa talking to her sister-in-law, Danielle Cotton. The first robber, who was not wearing a mask and whom she would identify as Tamir Wilson, came up to her and shook her hand with one hand while he brandished a pistol in the other hand. The second, as yet unidentified, robber sat on a barstool.

At first she thought the robbery was a joke, and she told the robbers to leave—but, Wilson brandished the pistol and told her to "shut up". Wilson then led Joe Shaffer upstairs, looking for money to steal. Shortly thereafter, Wilson proceeded back downstairs, where he and the second robber grabbed the family's PlayStation and video games.

Wilson then forced Ernaline Cotton, Danielle Cotton, and Joe Shaffer back upstairs in the townhouse. There, he began to search Danielle Cotton's bedroom, to no avail. Wilson then forced all three into the hall bathroom at gunpoint, but then pulled Ernaline Cotton out and took her into the bedroom, where he shut the door.

Wilson held the pistol to her head, demanding that she reveal where the family's money was hidden. When she told him that he had taken all of their money, he then forcibly made her kiss him and then, at gunpoint, made her commit oral sodomy upon him. As soon as he was finished, he and the other robber fled the residence. She then threw-up in the bedroom sink.

Initially, she persuaded her boyfriend not to call 911 because both robbers had threatened to come back and kill them if they called the police. However, Joe Shaffer and Danielle Cotton persuaded her to call 911 by the next day, which she did.

**Joseph Shaffer and Danielle Cotton** would both also identify Tamir Wilson as one of the robbers in these crimes.

**Detective Tim Bryner** of the Spotsylvania County Sheriff's Department would testify that Ernaline Cotton, Danielle Cotton, and Joe Shaeffer all picked Tamir Wilson from a photo lineup. (All three also agreed that Duane Edwards was not the second robber).

**Special Agent Jeff Howard** of the F.B.I. would testify that, on January 8, 2003, the defendant called him from the Rappahannock Regional Jail wanting to talk

4

> about this predicament. Special Agent Howard went to the jail on January 9, 2003 to visit the defendant, in response to his request. Before questioning the defendant, Tamir Wilson, he advised him of his rights under <u>Miranda</u>, which rights the defendant waived in writing.
>
> The defendant volunteered to Special Agent Howard that, on January 3, 2003, he, Duane Edwards, and George William "G.W." Richardson had robbed the Harvey residence located at 10706 Brittany Court in Spotsylvania County. He stated that Richardson was the planner and the get-away driver—whereas he as Edwards actually committed the robbery. He further said that Richardson supplied the pistols used, at least one of which was recovered in the police search of Richardson's home. The defendant further admitted that he was armed with two semi-automatic pistols, and that he was wearing a blue ski mask which was pulled half-way down over his face. He stated that he and Edwards together stole $550.00 in cash from Harvey, plus three knives from the other victims. He admitted that these same three knives were the ones the police located in his motel room.
>
> Special Agent Howard next confronted Wilson with the Cotton/Shaffer robbery which occurred on December 27, 2002. Wilson admitted that he went to the Cotton/Shaffer residence to commit the robbery. He contended that he was driven to the house by George William "G.W." Richardson, who targeted the residence. (He further contended falsely that Duane Edwards was the second robber. The Commonwealth knows this is false because none of the victims identified Duane Edwards, and the victims' physical description of the second assailant is of a much smaller, lighter-skinned man than Duane Edwards, who does not even come close to physically resembling the second robber, who was also not wearing a mask). Wilson admitted that he robbed all three members of the house, and forced them in the upstairs bathroom. However, Wilson denied that he asked Ernaline Cotton to kiss him, and he further denied that he forced her to commit oral sex upon him. Wilson also admitted that he sold the games and PlayStations that he acquired in the various home invasion robberies. He contended that Richardson only targeted drug dealers['] homes to hit. Wilson also estimated for Special Agent Howard that he profited about $9,000 from his share of at least six home invasion robberies of drug dealers that he participated in before he was caught.

ECF 12-1 at 47-51.

Wilson's plea agreement required him to plead guilty to seven counts (one count of forceable sodomy; two counts of robbery; two counts of burglary in the nighttime; and two counts of use of a firearm in the commission of a felony), and in return the prosecution would *nolle prosequi* the remaining indictments (three counts of robbery, one count of conspiracy to commit robbery, and one count of possession of a firearm by a convicted felon). *Id.* at 51-53. The prosecution further agreed to make his cooperation against others known to the sentencing court,

5

amend the burglary indictments to remove the allegation that Wilson was armed, and not seek revocation of his suspended time for other Spotsylvania County convictions. *Id.* at 52-53, 57.

On January 27, 2004, Wilson, by counsel, filed a motion to reconsider his sentence in the trial court, which the court denied on February 4, 2004. *Id.* at 99-103. On March 18, 2024, Wilson, proceeding *pro se*, filed a fourteen-page "Motion for Concurrent Sentence/Sentence Reduction," which the court denied on April 8, 2024. *Id.* at 104-17. Wilson did not appeal the denial of either motion.[2]

On October 5, 2022, Wilson filed a petition for a writ habeas corpus in this Court, *Wilson v. State of Virginia,* No. 1:22cv1138 (MSN/WEF), pursuant to 28 U.S.C. § 2254, which the Court dismissed without prejudice on April 17, 2022, because the § 2254 petition was not signed and appeared to be time barred. *Id.* at ECF 6. The previous petition raised the following grounds:

| | |
|---|---|
| Ground I: | Counsel was ineffective for failing to adequately explain Wilson's plea; |
| Ground II: | Counsel did not investigate DNA or fingerprint evidence; |
| Ground III: | The evidence was insufficient to prove that Wilson possessed a firearm in the commission of a felony; |
| Ground IV: | Wilson's sentence was excessive; and |
| Ground V: | There was insufficient evidence to prove Wilson committed sodomy. |

---

[2] The online dockets of both the Virginia Court of Appeals and the Virginia Supreme Court, *see* https://www.vacourts.gov/, Case Status and Information, Virginia Supreme Court and Virginia Court of Appeals Tabs (search "Wilson, Tamir") (last searched Jan. 28, 2025): *see Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("most frequent use of judicial notice of ascertainable facts is in noticing the content of court records"); *see, e.g., Lynch v. Leis*, 382 F.3d 642, 647 & n.5 (6th Cir. 2004) (taking judicial notice of state court records available to public online), corroborate Wilson's petition in which he indicated that he had not filed a direct appeal or any appeals in either appellate court; and that he had not appealed to the highest state court having jurisdiction over his motions. In addition, Wilson entered "N/A" in answering the question that asked if he had appealed. ECF 1 at 2, 5-13. Wilson gave a confusing answer in his petition under the grounds for relief portions of the form—in which he answered "yes" to the question that asked if he had raised an issue through the highest state court, ECF 1 at 12, ¶ 13(a); and in the next question, he answered "N/A" as to the name and location of the court to which he appealed, *id.* at 12, ¶ 14. Wilson, however, has not submitted any documents, opinions, or orders that would support his "yes" answer, and, as noted, the online dockets indicate no appeals were filed. Lastly, Wilson has not disputed Respondent's assertion that he did not file any appeals in Virginia. ECF 12 at 2.

*See id.* at ECF 1.

## II. The Federal Petition

On May 8, 2024, Wilson filed the present § 2254 petition in this Court, which raises the following claims:

| | |
|---|---|
| Ground I: | Petitioner's sentence was excessive in light of "Mr. Wilson's Mental Health and Traumatic Childhood;" |
| Ground II: | Petitioner "was using illegal drugs at the time of the offense[s]," which is "why he committed these crimes, to help support his drug habit" and his counsel was ineffective for not bringing "this up advocating to the court" which is "why he was never considered for a drug treatment program;" |
| Ground III: | "Ineffective counsel. Counsel did not request a mental health evaluation;" counsel told Petitioner "all of his charges would run concurrent;" "Counsel did not explain an *Alf[ord]* Plea to" Petitioner; counsel "had multiple complaints against him for misuse of alcohol and misrepresentation;" counsel failed to inform Petitioner "he would have to register as a sex offender;" and Petitioner was "forced and pressured into taking an *Alf[ord]* plea." |
| Ground IV: | "Racism." Petitioner "was a young black male in Virginia and was harshly and unjustly sentenced. Virginia judges are known for their harsh sentences of black men." |

ECF 1 at 5, 7, 8, 10.[3]

## III. Statute of Limitations

Respondent seeks dismissal of the federal habeas petition as untimely. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for a writ of habeas corpus must be dismissed if it is filed more than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have

---

[3] A district "court must consider claims as they are presented in the petition, reviewing them under the applicable standard" and it is "the district court's duty to consider only the specific claims raised in a § 2254 petition." *See Folkes v. Nelsen*, 34 F.4th 258, 269 (4th Cir. 2022) (citations omitted); *Frey v. Schuetzle*, 78 F.3d 359, 360–61 (8th Cir. 1996) ("[D]istrict courts must be careful to adjudicate only those claims upon which the petitioner seeks relief and take care not to decide claims upon which the habeas petitioner never intended to seek relief.").

been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)–(D). This period generally begins on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" and excludes "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(1)(A), (d)(2).

Wilson did not appeal his January 12, 2004 convictions, which became final thirty days later (February 11, 2004), when the time to file a notice of appeal from the circuit court to the Virginia Court of Appeals lapsed. Va. Sup. Ct. R. 5A:6;[4] *Miller v. Hooks*, 749 F. App'x 154, 159 (4th Cir. 2018) ("[A] state conviction for a petitioner who does not appeal to the state court of last resort becomes final when the time for seeking further review in state court expires") (citing *Gonzalez v. Thaler*, 565 U.S. 134, 137 (2012) ("[F]or a state prisoner who does not seek review in a State's highest court, the judgment becomes 'final' on the date that the time for seeking review expires.")). Further, in calculating when direct review ends, the 90-day period for filing an application for writ of certiorari with the United States Supreme Court is not included when a habeas petitioner, such as Wilson, does not properly maintain a direct appeal through the highest available state court. *See Butler v. Cain*, 533 F.3d 314, 316-19 (5th Cir. 2008); *Pugh v. Smith*, 465 F.3d 1295, 1297-1300 (11th Cir. 2006). Petitioner, therefore, had one year from February 11, 2004, or until Wednesday, February 11, 2005, to file his § 2254 petition. Absent statutory or equitable tolling, the federal petition is untimely.

---

[4] *See Jefferson v. Commonwealth*, 840 S.E.2d 329, 331 (Va. 2020) (Rule 5A:6 "requires that an appeal to the Court of Appeals be noted within thirty days of the entry of final judgment"); *Woody v. Commonwealth*, 670 S.E.2d 39, 43 (Va. Ct. App. 2008) ("If the notice of appeal is not filed within 30 days, 'the notice is "ineffective" and the appeal is never properly perfected.'") (quoting *Zion Church Designers & Builders v. McDonald*, 445 S.E.2d 704, 706 (Va. Ct. App. 1994) (recognizing that the time requirement is jurisdictional)).

*A. Statutory Tolling*

In calculating the one-year period, the Court must exclude the time during which properly filed state collateral proceedings are pending. *See* 28 U.S.C. § 2244(d)(2); *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts). Wilson filed two post-conviction motions. The first, on January 27, 2004, was filed by counsel, and was denied on February 4, 2004. ECF 12-1 at 99-103. Assuming he was entitled to thirty days from the denial of that motion to file a notice of appeal, the latest date his convictions became final would have been Friday, March 5, 2004. *See Harris v. Hutchinson*, 209 F.3d 325, 328 n.1 (4th Cir. 2000) ("[T]he [AEDPA] provides that the one-year period does not commence until the latest of the date when judgment on direct review 'became final' or 'the expiration of the time for seeking such review.'") (quoting 28 U.S.C. § 2244(d)(1)(A))). Wilson did not appeal the denial of this motion. Accordingly, unless otherwise tolled, his one-year statute of limitations would expire on Monday, March 6, 2006. Any petition filed after that date would be untimely.

Wilson, proceeding *pro se*, filed a second fourteen-page motion for reconsideration entitled, "Motion for Concurrent Sentence/Sentence Reduction," on March 18, 2024—well after the statute of limitations expired—which the trial court denied on April 8, 2024. ECF 12-1 at 104-17. Wilson did not appeal the denial of this motion. The motion, however, did not toll or otherwise "restart" his statute of limitations clock because it had already lapsed on Monday, March 6, 2006. Wilson executed his federal petition on May 8, 2024—more than eighteen years after the expiration of the one-year federal statute of limitations. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the

9

limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."). In his petition, Wilson argued that his federal petition is timely because his March 18, 2024 "Motion for Concurrent Sentence/Sentence Reduction," filed in the circuit court, "was denied on 04/08/2024." ECF 1 at 14. As noted, however, the federal statute of limitations had already lapsed before he filed the motion. S*ee Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."); *Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001) ("[E]ven 'properly filed' state-court petitions must be 'pending'. . . to toll the limitations period." (quoting *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000)). In short, absent equitable tolling, the present federal petition is barred by the statute of limitations.

*B. Equitable Tolling*

To be entitled to equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace*, 544 U.S. at 418). The petitioner generally is obliged to specify the steps he took in diligently pursuing his federal claim. *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001). In addition,

> [t]he word "prevent" requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances."

*Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000); *see also Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003).

Here, Wilson simply argues that his petition is "timely because" his motion for reconsideration was denied on "04/08/2024." ECF 1 at 14. Although his argument has no merit, the Court finds that the record does not establish that Wilson was diligent in pursuing his claims,

and his untimeliness is not excused because he sought to exhaust his claims in state court eighteen years after the statute of limitations had already lapsed. Wilson has also not asserted, and the record does not establish, that he was prevented from timely filing by extraordinary circumstances beyond his control. Accordingly, equitable tolling is not warranted. Based upon the foregoing, the petition was not timely filed, and it is barred by Section 2244(d)(1).

### IV. Exhaustion and Procedural Default

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. *See* 28 U.S.C. § 2254(b); *Granberry v Greer*, 481 U.S. 129 (1987). To exhaust a claim, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A petitioner must present his federal claims to the appropriate state court in the manner required by the state court to give the state court "a meaningful opportunity to consider allegations of legal error." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986); *see also Castille v. Peoples*, 489 U.S. 346, 351 (1989) (raising a claim in a manner in which "the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor . . . does not, for the relevant purpose, constitute fair presentation." (internal quotations and citations omitted).

A petitioner convicted in Virginia must have presented the same factual and legal claims raised in his § 2254 petition to the Supreme Court of Virginia. *Kasi v. Angelone*, 300 F.3d 487, 501–02 (4th Cir. 2002); *see, e.g., Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial

11

denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").

Exhaustion requires that a petitioner "raise the claim at each level of state court review," which includes his initial post-conviction petition before the trial court, and again on appeal. *Smith v. Gaetz,* 565 F.3d 346, 352 (7th Cir. 2009); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in *each* appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." (emphasis added).[5]

"A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) (citation omitted). Importantly, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim." *Id.* (citation omitted).

A federal court may review a defaulted claim if the petitioner demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law" or a fundamental miscarriage of justice. *See Vinson v. True*, 436 F.3d 412, 417 (4th Cir. 2005). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty

---

[5] Exhaustion requires that not only must a claim be exhausted but "'both *the operative facts* and the controlling legal principles'" upon which a petitioner relies must have been exhausted as well to the state court for review. *Kasi*, 300 F.3d at 501-02 (emphasis added) (quoting *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997)). The requirement that facts be exhausted is an important aspect of exhaustion under AEDPA, which limits federal habeas "review under § 2254(d)(1) . . . to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). *Pinholster* emphasized "that the record under review is limited to the record in existence at that same time *i.e., the record before the state court*." *Id.* (emphasis added). The Fourth Circuit found that the reasonableness of a state court decision is evaluated "'in light of the evidence presented in the State court proceeding.'" *Porter v. Zook*, 898 F.3d 408, 443 (4th Cir. 2018) (quoting *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015)).

of the claim. *See Coleman v. Thompson*, 501 U.S. 722, 753–54, (1991). To show "prejudice," a petitioner must show that an alleged constitutional violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis removed). A court need not consider the issue of prejudice in the absence of cause. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995).

A procedural default also may be excused if the petitioner demonstrates that "failure to consider the claim[] will result in a fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750, *i.e.*, that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v.* Carrier, 477 U.S. 478, 496 (1986). In order to make this showing, a federal habeas petitioner must present new "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup v. Delo*, 513 U.S. 298, 316 (1995).[6]

Petitioner did not exhaust any of his claims regarding sentencing (Ground I, excessive sentence in light of mental health history; Ground II, not considered for a treatment program; Ground IV, Virginia judges are racist), through the Virginia Supreme Court. To the extent the claims were raised in either of his post-conviction motions for reconsideration, each motion was denied in the circuit court and petitioner did not appeal the denial of either motion. ECF 1 at ¶ 11 (d); *id.* at Ground III, ¶ (d)(4); *Id.* at Ground IV, ¶ (d)(4). Petitioner did not file an appeal after the judgment order was entered on January 12, 2004, *id.* at ¶ 9(g); and also did not file any state petitions for a writ of habeas corpus. *Id.* at 12, ¶ 6.

---

[6] Wilson has not asserted any new evidence and his petition clearly does not assert he is he is "actually innocent." In his prayer for relief, Wilson limits his relief to "Run my sentences concurrently," and does not contest his guilt. ECF 1 at 15.

If Petitioner now attempted to raise his claims (Grounds I, II and IV) by way of a state habeas petition, each claim would be barred by the Virginia habeas statute of limitations, Virginia Code § 8.01-654(A)(2), and Virginia's bar on successive habeas petitions, Virginia Code § 8.01-654(B)(2). As both the Virginia statute of limitations and the Virginia successive petition bar are adequate and independent state procedural rules barring federal habeas review, the claims would be deemed simultaneously exhausted and defaulted. *See Pope v. Netherland*, 113 F.3d 1364, 1372 (4th Cir. 1997) (Virginia Code § 8.01-654(B)(2) is independent and adequate state law default); *Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006) (Virginia Code §§ 8.01-654(A)(2) and 8.01-654(B)(2) are independent and adequate state law defaults). The claims would also be defaulted pursuant to *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974), which bars collateral review of issues that could have been raised on appeal, such as sentencing. *Prieto v. Zook*, 791 F.3d 465, 468 (4th Cir. 2015) (finding sentencing issue defaulted pursuant to *Slayton*, which precluded federal habeas review, absent cause and prejudice or miscarriage of justice exceptions) (citing *Mu'Min v. Pruett*, 125 F.3d 192, 196-97 (4th Cir. 1997)); *Reid v. True*, 349 F.3d 788, 805 (4th Cir. 2003) (citing *Wright v. Angelone*, 151 F.3d 151, 159-60 (4th Cir. 1998)).

Ground III, (ineffective assistance of counsel for not seeking a mental health evaluation; misinforming Petitioner his sentences would be run concurrently; not informing Petitioner he would have to register as a sex offender; not explaining an *Alford* plea to Petitioner; and counsel "had multiple complaints against him for misuse of alcohol and misrepresentation"), was not exhausted through the Virginia Supreme Court.[7] The record in the instant case demonstrated that Wilson has not established cause to excuse his defaults, and he did not suffer any prejudice.

---

[7] Petitioner did include a claim of ineffective assistance of counsel in his second motion for consideration, which the circuit court denied on April 8, 2024. ECF 12-1 at 111-13. Petitioner did not appeal the denial of that motion. *See, supra* at 6.

Wilson's claims (Grounds I, II, and III) concern his mental health history and drug use, and his assertion that counsel failed to request a mental health evaluation. The record establishes that counsel filed a motion for a psychological evaluation on April 9, 2003. Spotsylvania Circuit Court Manuscript Record ("CCT") at 52-53. On April 16, 2003, the trial court ordered a psychological evaluation, and the report was filed with the trial court on May 15, 2003. *Id.* at 60-68. Along with the report, *id.* at 158-65, the trial court considered several exhibits submitted at sentencing from Wilson's juvenile record in Washington D.C. The exhibits included a May 22, 1996 psychological evaluation (age 15); an August 13, 1996 Social Study (age 15); a December 13, 1996 Psychiatric evaluation (age 15); other records from his juvenile file; a January 20, 1997 behavioral evaluation (age 16); a discharge summary (age 16); a Psychiatric evaluation dated June 6, 1998 (age 17); and a discharge summary dated July 10, 1998 (age 17). *Id.* at 166-233. The record refutes the allegation that a mental health examination had not been requested, and also establishes that the trial judge had considered current and historical mental health records before sentencing.

Ground III also alleges that Petitioner was coerced into pleading guilty pursuant to *Alford,* that he had been told his sentences would run concurrently with each other, and that he was not informed he would have to register as a sex offender. Wilson's claims are refuted by his plea agreement[8] and are also conclusory, and his Ground IV, "Racism," is likewise wholly conclusory. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) (bald assertions and conclusory allegations are insufficient to support habeas relief), *overruled on other grounds as recognized in*

---

[8] The plea agreement sets out the sentencing range for the offenses Petitioner agreed to plead guilty to and the minimum sentence, aggregated without any concurrent sentence, was 80 years; the maximum was multiple life terms plus 41 years in prison. ECF at 12-1 at 51-52. The agreement left open the possibility that 'all or part" of his sentence in Spotsylvania County could be run concurrent with sentences imposed in Stafford County. *Id.* at 52. The plea agreement included the stipulation of facts that was qualified as to what the Commonwealth could prove at trial, *id..* at 46-47, and also that an *Alford* plea was not a concession on Wilson's part that he was "conceding factual guilt," and only an admission that "the Commonwealth ha[d] sufficient evidence to convict [him], and that it [was] in [his] best interest to enter this plea. The only remaining issue to be decided by the Court is punishment." *Id.* at 51.

*Yeatts v. Angelone*, 166 F.3d 255, 261 n.4 (4th Cir. 1999); *see also United States v. Dyess,* 730 F.3d 354, 359-60 (4th Cir. 2013) (holding that the district court may disregard "vague and conclusory allegations" in habeas petitions and review only claims "supported by facts and argument"); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").[9]

Further, in Virginia, circuit courts have the discretion to run sentences concurrently with one another.

> "Generally, circuit courts have the authority to exercise discretion to run sentences concurrently." *Brown v. Commonwealth*, 284 Va. 538, 542, 733 S.E.2d 638 (2012); *see* Code § 19.2-308 ("When any person is convicted of two or more offenses . . . such sentences shall not run concurrently, unless expressly ordered by the court."). "[T]his discretionary exercise of authority may be, and has been proscribed by the General Assembly when it has directed that sentences for certain crimes may not be run concurrently." *Brown*, 284 Va. at 542.

*Botkin v. Commonwealth*, 819 S.E.2d 652, 654 (Va. 2018); *see also Prewitt v. United States*, 83 F.3d 812, 818-19 (7th Cir. 1996) ("This discretion to sentence Prewitt means that only the *possibility* existed he would receive a concurrent sentence ... A mere possibility of prejudice does not qualify as actual prejudice.").

Moreover, the plea agreement establishes that Wilson understood that there was no agreement as to sentencing, except that the "Court will order a Pre-Sentence Report and a Victim/Impact Statement from Ernaline Cotton. Should the defendant testify truthfully and completely against co-defendant, George W. Richardson, and any other co-defendants who may

---

[9] Petitioner has not pointed to any evidence that the trial judge in his cases was motivated by racism. *Cf. Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489 (1999) (requiring "a criminal defendant to introduce 'clear evidence' displacing the presumption that a prosecutor has acted lawfully."); *McCleskey v. Kemp*, 481 U.S. 279, 292-93 (1987) ("[T]o prevail under the Equal Protection Clause, [petitioner] must prove that the decisionmakers in *his* case acted with discriminatory purpose."); *see also Duncan v. Burgess*, No. 1:23cv355, 2024 U.S. Dist. LEXIS 110464, *57 (W.D. June 24, 2024) ("Because Petitioner's challenge regarding the jury pool and 'systemic racism' is entirely conclusory, the Court cannot agree with Petitioner that trial counsel was ineffective for failing to present an expert witness on that topic.").

16

be charged in these crimes, the Commonwealth will make the sentencing court aware of such cooperation." CCT at 84. In addition, the Commonwealth agreed that if Wilson fully and honestly cooperated in the prosecution of his co-defendant George William Richardson, as well as any other co-defendants, and due to the "high sentencing guidelines for these crimes (mid-point nearly 20 years)" that it would

> leave open for argument the possibility of the Court running all or part of the defendant's sentences in Spotsylvania County concurrently with what sentences may be imposed in Stafford County for similar crimes. However, it is expressly understood that the Commonwealth reserves the right to oppose such concurrent sentences, but is only agreeing to leave this matter open for argument.

*Id.*. As noted above, Wilson was sentenced to ninety years in prison, with fifty years suspended, leaving him with an active sentence of forty years to serve. The trial court also ran Wilson's sentence forty-year sentence concurrent with a twenty-year sentence that had been imposed upon him in Stafford County. In sum, because twenty years of his sentence was run concurrently with the sentence imposed in Stafford County, Petitioner will have to serve a total of twenty years solely for his convictions for forceable sodomy; two counts of robbery; two counts of burglary in the nighttime; and two counts of use of a firearm in the commission of a felony.

Finally, with the exception of deportation, failing to inform a defendant of a collateral consequence of his plea—here, that Wilson would have to register as a sex offender—is not a Sixth Amendment violation. *See Sims v. United States*, 785 F. App'x 632, 634-35 (11th Cir. 2019) ("An attorney's failure to advise his client of collateral consequences of pleading guilty, other than deportation, is not a Sixth Amendment violation . . . [h]owever, affirmative misadvice about the collateral consequences of a guilty plea may constitute ineffective assistance of counsel because certain considerations are so important that misinformation from counsel may render the guilty plea constitutionally uninformed." (internal quotation marks omitted)); *see also Chaidez v. United States*, 568 U.S. 342, 349 n.5 (2013) ("[O]ther effects of a conviction commonly viewed as

17

collateral include civil commitment, civil forfeiture, sex offender registration, disqualification from public benefits, and disfranchisement."); *Vaughn v. Holloway*, No. 16-5225, 2017 WL 7806615 at *3 (6th Cir. Sept. 18, 2017) (rejecting the petitioner's claim "that his trial counsel was ineffective for failing to adequately inform him that he would be subject to Tennessee's sex-offender registry requirements for life," because "there is no clearly established federal law holding that the Sixth Amendment right to effective counsel requires a defense attorney to give that advice"), *cert. denied*, 583 U.S. 1172 (2018).

Wilson's federal petition is not only untimely, but his claims are defaulted and meritless.

## IV. Conclusion

For the foregoing reasons, Respondent's Motion to Dismiss (ECF 10) will be granted, and the petition will be dismissed by an order to be issued with this Memorandum Opinion.

/s/
Michael S. Nachmanoff
United States District Judge

March 3, 2025
Alexandria, Virginia